Wheeler, J.
The principal question to be determined is whether a case is presented by the record which authorized the judgment of the court awarding a pi-remplory mandamus.
This process, in modern practice, is regarded as an action by the party on whose relation it is granted to enforce a private right, when the law affords no other adequate means of redress.
It lies to compel public officers and courts of inferior jurisdiction to proceed to do those acts which clearly appertain to their duly. But it does not lie to instruct them as to the manner in which they shall discharge a duty which involves the exercise of. discretion or judgment. The distinction seems to be that if the inferior tribunal has jurisdiction, and refuses to act or to entertain the question for its decision, in eases where the law enjoins upon it to do the act required, or if the act be merely ministerial in its character, obedience to the law will be enforced by mandamus where no other legal remedy exists. But if the act to be performed involves the exercise of judgment, or if the subordinate public agent has a discretion in regard to the matter within his cognizance, and proceeds to exercise it according to the authority conferred by law, the *233 superior court cannot lawfully interfere to control or govern that- judgment or discretion by mandamus. (19 Johns. R., 259; 13 Pick. R., 225.)
The eases in which a mandamus will lie and the pleadings and proceedings in those cases have been the subject of frequent adjudication in this court. (Smith v. Power, 2 Tex. R., 57; Glasscock v. The Commissioner General Land Office, 3 Tex. R., 51; Bracken v. Wells, 3 Id., 88; Banton v. Wilson, 4 Id., 400; Cullem, Adm’x, v. Latimer, Id., 329; Fitzhugh v. Custer, Id., 391; The Commissioner of the General Land Office v. Smith, 5 Id.)
In the case of Glasscock v. The Commissioner of the General Land Office, it was said to be ‘’an undoubted principle of law that a mandamus will not issue against a public officer unless to compel, the performance of an act clearly defined and enjoined by law, and which is therefore ministerial in its nature, and neither involves the exercise of discretion nor leaves any alternative.” And in the case of Thé Commissioner of the General Land Office v. Smith, it was said, upon the authority of numerous eases there citccVthat ‘‘a mandamus will issue to an officer of the Government only where the duty to be performed is ministerial in its character; but where there is imposed upon the officer by law a duty requiring the exercise of discretion or judgment a mandamus will not lie to control the exorcise of that discretion or judgment.”
It appears from the petition in this ease that authority was conferred by law upon the defendant below, who was chief justice of the county of Cass, to take jurisdiction and decide in the matter of the election of a seat of justice for that comity, and that he proceeded to exercise that authority conferred and to decide in the matter submitted to his cognizance. If, therefore, the acts to bo performed wore not ministerial in their character, the case seems very clearly to come within the operation of (he general principle that where there is an authority conferred, and the inferior tribunal has proceeded to exercise that authority and to decide upon the subject-matter within its cognizance, a mandamus will not lie. Hence it becomes material to inquire whether the acts to he performed by the chief justice in this case were merely ministerial acts.
The authority under which the chief justice acted was conferred by a special statute, providing' for the location of the seat of justice of Cass comity. (Acts of 1850, p. 19.) The 1st section of the act requires the chief justice of the county of Cass to ol'der an election for the purpose of electing a seat of justice for the county. The 7th section directs that the election shall be held and the returns made in accordance with tiie laws of the State regulating elections. And the 3d section declares the towns of Jefferson and Linden nominated for said seat of justice, and that the place receiving a majority of all the votes polled shall be the seat of justice of the county.
Tiie 12th section of the, act of 1848 “ regulating elections” (Hart. Dig., p. 299) provides that the managers of the election shall count the votes, make out a correct return signed by them, which símil be sealed up and delivered to the-chief justice of the county “by one of the managers or some other respectable person, who shall swear that ho received tire package from one of the managers or the returning officer, and that the seals have not been broken since, which delivery shall be upon oath before the return day of said election, a duplicate of which return shall be kept by the presiding officer.” The 15th section of the same act provides that “ tiie election returns shall not be opened by the officer to whom they are returned before the return day or tenth day and exclusive of the day of election; at the expiration of that time he shall open them and estimate the result, recording (he state of the polls of each precinct in a book to be kept by him for that purpose,” &c.
These are the provisions of the law, so far as material to the present inquiry, which prescribe llie duties enjoined upon the chief justice of Cass county in the matter of this election.
*234 Were those duties merely ministerial in their character? The distinction between merely ministerial and judicial and other official acts is that “where the law prescribes and defines the duty to be performed with Pitch precision and certainty as to leave nothing- to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.” (The Commissioner G. L. O. v. Smith, 5 Tex. R., 471.)
The application of these well-settled general principles to particular cases will doubtless sometimes be attended with embarrassment and difficulty. And their application in the present case may not be wholly free from difficulty. But I apprehend by no rides which distinguish merely ministerial from judicial and other official acts, and by no precedent to lie found among adjudged cases, can tlie authority specially delegated to the officer in the present case he held to comprehend only acts of the*"former character.
Judicial knowledge surely was not required in counting the votes and in the computation of numbers. But whether llic elections .liad been hold™ and t.ho returns made from the various precincts in conformity to the provisions of tlie law upon that subject; whether they came in the shape and accompanied with those evidences of correctness and genuineness, and with that legal authentication which entitled them under tlie law to be received and counted, were questions of law tlie decision of which involved the exercise of judgment. They were questions submitted to tlie judgment and decision of the chief justice by the special statute which conferred on him jurisdiction in the matter of this election. In their decision lie cannot he said to have acted in a merely ministerial capacity. Having jurisdiction of this subject, and having acted and exercised his judgment in pursuance of tlie authority conferred, the case comes within the description of that class of cases in which, according- to all tlie authorities on this subject, a mandamus will not lie.
Of tlie numerous cases which might be adduced in illustration of the principie a single reference may suffice.
In tlie case of The Commonwealth v. Cochran, (o Binn. R., 87) the question was whether a mandamus would lie to compel the secretary of tlie land office to make certain calculations of pnrehase-mouey and interest on lands sold preparatory to the obtaining of patents; and it appearing that the officer, under the direction of the board of property who had cognizance of the subject liad made tlie calculations, though in an erroneous manner, it was held that a mandamus would not lie to compel him to make them in a proper manner. If lie had omitted or wholly refused to make tlie calculations, it would have been otherwise. But even then it was said, the act not being considered by the court as merely ministerial, it would not have interfered by that process to command the officer in what manner to make the calculations. Chief Justice Tiighman said: “I do not consider tlie calculation of the purchase-money as an act merely ministerial, for, in order to ascertain the amount, the contract must he examined,” &c. And the reason he assigns for this opinion is that the calculations necessarily involved the decision of certain questions of law as to the maimer in which they should he made. “Tlie principles (lie says) which govern the court in issuing writs of mandamus are well understood. * * * Where a ministerial ait is to be done and there is no other specific remedy a mandamus will be granted to do the act which is required. But where tlie complaint is against a person who acts in a judicial or deliberative capacity he may be ordered by mandamus to proceed to do ids duty by deciding and acting according to .the best of his judgment; but the court will not direct him in what manner to decide.” (Ib., 103, 104.)
In the case of the Commonwealth». The Judges of Common Pleas (3 Id., 275) the. sartie learned judge said : “ In the. case of the United States v. Lawrence (3 Dall. 42) it was determined by the Supreme Court of the United States, *235 clearly and unanimously after full argument, that although they might command' an inferior judge to proceed to judgment, yet they had no power to compel him to decide according to the dictates of any judgment hut his own.”
The officer was constituted by the statute a special tribunal, with authority to judge and decide in the matter of this election. In the exercise of the authority conferred he acted, at least in some measure, in a special, judicial, or deliberative capacity, and his action cannot be controlled by mandamus by any rules by which the scope and object of that process are prescribed and deiined.
As to this election the statute confided to the officer a personal trust, distinct from his ordinary official duties; an independent personal authority, limited to one express object, and to bo exercised according to the dictates of his own judgment upon the law. When he had exercised his judgment and finally disposed of the subject his authority was fundus officio. By its exercise it was exhausted. No mode of revising his decision was provided, either by the special statute which conferred the authority or by any general law. And his decision, therefore, according to the authorities, was-final and conclusive. (Elliott v. Piersoll, 1 Pet. R., 328, 341, and authorities cited in Baker et al. v. Chisholm, 3 Tex. R., 157.)
This point was expressly decided by the unanimous opinion of this court in the case last cited. There, as in this case, a special authority had been conferred on the chief justice of a county respecting the election of a county seat, and no mode of revising his judgment having been provided by law, we held his decision final. (Ib., 158; and see Cullem, Administrator, v. Latimer, 4 Tex. R., 329; Field v. Anderson, 1 Id.)
The authority here conferred was in the nature of a special commission, which was determined by the performance of the act to which it extended. It did not constitute the officer a judicial tribunal or “inferior jurisdiction” within the meaning of the Constitution. (Const., art. 4, sec. 10.) That has reference to those inferior judicial tribunals which are constituted to administer the justice; of the country, and whose proceedings are according to the course of the common law. But if it were otherwise, if the appellant was constituted an “inferior jurisdiction” in the sense of the Constitution, a mandamus is not the appropriate process by which to revise his judgment.
That it was the chief justice of the county who was empowered to act in this case did not change the character of the authority conferred. The duties imposed by the act had no connection with his official duties as chief justice, and might as well have been required of any private citizen. It is otherwise as to ordinary elections. In respect to these the duties of the chief justices are official duties; that is, duties appertaining to their office. The law provides for contesting elections, and thus affords a remedy for the correction of abuses. Should tiie elective franchise be invaded there would no doubt be found ample means of redress and power to correct the evil. No one who has imbibed anything of the spirit aud genius of our free government will ever question the peerless value and sacred inviolability of the elective franchise. It will be guarded with sleepless vigilance by all who appreciate the blessings of free institutions. And in thepresent case, if the appellant has not rightly exercised the authority with which he was entrusted, the same power which conferred the authority may annul his acts, may confer authority upon another officer or tribunal, may provide for revising his decision, and, in a word, may afford ample means and measure of redress, as was done by the Congress of the late Republic in respect to the acts of the boards of commissioners for issuing certificates to lands, by creating the tribunals of review constituted by the “act to detect fraudulent land certificates.” (See Opinion of the Supreme Court of the United States in the case of League'*). De Young on error from this court, Uow. R.) Such exercise of authority by the Legislature is of common occurrence where, as in this case, special tribunals have been created for special purposes, and no appeal has been provided, whose proceedings *236 are not according to the course of the common law, and whose decisions, as those of the board of land commissioners just referred to, are not subject to-revision in any of the ordinary modes provided by law.
The appellant, as to the duties enjoined respecting this election, iiad no successor in office. He was not required to keep or transmit to his successor in the office of chief justice «f the county the returns of tile election or any record of his proceedings. How, then, it may be asked, would his successor be enabled to obey a mandamus commanding' him to act upon those returns? From whom could obedience to the mandate be required? But it is unnecessary to pursue the inquiry; for if the decision of the appellant in the matter of the election is subject to revision in any of the modes provided by law, that it cannot tie by mandamus is conceded by counsel and, indeed, is too clear for controversy.
But it is insisted that the object of this proceeding' is not to revise the decision of the chief justice. That, it is admitted, cannot be done by mandamus. But the object, it is said, is to compel him to act upon the returns from all the precincts. But it seems he did act upon all the returns, counting some and rejecting others.
The case of The Commonwealth v. The Judges of the Common Pleas, befo/e cited, is in point. In that case it was held that a mandamus would not lie to the judges of Common Pleas to compel them to reinstate an appeal which they had dismissed, because this process cannot go to an inferior court to compel them to make any particular decision but only to decide, which the Common Pleas had done.
We have been referred by counsel for the complainants to'the case of Manor et al. v. McCall et al., (5 Ga. R., 522,) which is supposed to be an authority in support of their case. In that case the County Court liad been required by law to levy a tax for the purpose of raising a certain sum of money for a given object. The amount to be raised was known to the County Court. Yet they proceeded to levy a tax which was wholly inadequate to the proposed object. The court recognized the doctrine that a superior court will not undertake to regulate or control by mandamus a discretion in an inferior tribunal. But they held that the sum to be raised in that case having been ascertained, fixed the discretion of the County Court; that they were bound to execute the power conferred on them by the Legislature to that extent, and that to levy a tax for a sum manifestly inadequate was an evasion of their duty. “The mandate of the law,” the court said, “ was imperative and they had no option.” The court evidently regarded the duty enjoined upon the County Court as a positive duty, not admitting of the exercise of discretion or judgment, and consequently as ministerial. Upon this ground the mandamus was, awarded, and the case is therefore in accordance with the well-settled principles of the law upon this subject, as they have been uniformly maintained in other courts.
I do not doubt that a public officer or inferior tribunal may be guilty of so gross an abuse of discretion or such an evasion of positive duty as to amount .to a virtual refusal to perform the duty enjoined or to act at all in contemplation of law, and in such a case a mandamus would afford a remedy where there ivas no other adequate remedy provided by law. (2 McC. R., 171.)
Where the performance of a ministerial duty is enjoined by law upon a public officer or inferior judicial tribunal, the court, upon an application for a mandamus, will judicially determine the legal rights of the applicant, and will, of necessity, decide whether the duty exists. The question of law involved in this determination must, necessarily, intervene in every case where the interposition of judicial authority is required. This principle ivas adverted to in tiie case of the Commissioner of the General Land Office v. Smith. The case there presented, however, is plainly distinguishable from the present. The duty contemplated! as appertaining to the office of the commissioner, is clearly *237 ministerial, consisting simply in issuing a patent when the right of the applicant is free from doubt or controversy or when it shall have been judicially determined.
I have thus far examined this case on its merits, and I am of opinion that it is not a ease in which a mandamus will lie.
But whatever opinion may be entertained of the merits of the ease, if properly presented by tiie record, it is free from doubt that, as presented, the facts did not authorize tiie awarding of the writ.
The ground upon which the complainants place their right to the interposition of tiie authority of the court in their behalf is, that by tiie action of tiie officer they were deprived of their right to have their votes counted in estimating the x'esnlt of the election. Yet they do not aver that they were qualified electors of the county of Cass. This was essential to entitle them to institute this proceeding on the ground of interest alleged. They do, however, state that they are citizens of the county, and that they have been deprived of their elective franchise in this election; and it may perhaps be hence inferred that they were qualified electors. But tiie rules of pleading require that tiie facts relied on be stated directly and positively, and not by way of argument or inference.
In Cullem v. Latimer this court said : ‘‘The circumstances under which tiie applicant claims tiie right should be positively and distinctly stated, and objections which might be anticipated should be met and answered.”
But if tiie complainants have shown such an interest in the subject as entitles them to sue, have they shown a clear legal right to demand and an obligation on the part of the officer to do the acts required? Or have they shown that the officer did not act in accordance with tiie law and Ills duty?
This is an extraordinary remedy, to be resorted to only when the party lias no other adequate means of redress afforded him. And to entitle a party to tliis remedy lie must show a clear legal right in himself and a corresponding obligation on the part of tiie officer; for if the right or the obligation be doubtful the court will not interfere by this process.
The petition alleges in general terms that the election was duly holdcn and the returns thereof made in accordance with tiie laws of the State regulating elections. But when it proceeds to specify the particular returns which were not received, and counted it states only that they were made within the time prescribed by law, but not that they were made in conformity to the requirements of law. And if it did in terms so stated it would not be sufficient, especially in a case of this character, where greater certainty of pleading is required than in ordinary actions. (Cullem v. Latimer.) The pleader ought to state, not legal deductions and conclusions merely, but tiie facts of his case.
The law required that tiie returns should be made under oath. But it is not alleged that those which were rejected were so made. The complainants have tints failed to show a fact, without which they have no cause of complaint.
Títere were, it is true, no exceptions to the petition. But tiie omission of the defendant to except did not authorize tiie judgment awarding the writ. The omission of a public officer to interpose those matters of defense which lie might have interposed will not authorize tiie awarding of a mandamus against' him to enforce the doing of acts involving the interests of the public, and in the performance of which the officer may be less interested than others who are not, and from tiie nature of the case cannot be, made parties to the proceeding and enabled to assert their rights.
In Bracken v. Wells (3 Tex. R.) it was said : “Where there is a substantial defect in the proof of the plaintiff’s right the writ ought not to be awarded, whatever willingness of obedience may be manifested by the officer.”
The answer of the defendant, though vague and uncertain, is not more so than the petition. It traverses tiie substantial ground of complaint; alleging that the. defendant did receive and count all the returns which were made in accordance with law. This, if true in point of fact, was a good defense, in law; and if not true, the harden uf showing its untruth was with tiie plaintiff. *238 (Fitzhugh v. Custer, 4 Tex. R.) If the petition liad stated the facts respecting tlie manner iu which the returns were made the officer would have been apprised of tlie precise grounds of the complaint against him, and the facts he was required to answer. A case would have been presented admitting of a direct and definite answer to the allegations of fact, and it might with better reason have been objected that tlie answer was insufficient.
It does not appear by tlie record that the returns rejected by the officer were not rightly rejected. The court cannot judicially determine from the allegations of tlie parties that those returns were made with such regard to the requirements of the law as authorized the officer to receive and consider them in estimating' tlie result of the election, or that he has violated tlie law and his duty iu any respect whatever. Enough, therefore, does not appear to authorize this proceeding in any view of thecase.
We conclude that tlie mandamus was erroneously awarded, and the judgment must therefore be reversed.
The view we have taken of the case upon tlie pleadings might have dispensed with tlie necessity of discussing the merits. In my view of the case, however, it became necessary to form an opinion upon tlie merits in order to determine upon tlie proper disposition of tlie case, and whether it should he remanded to the District Court; for if it be a case in which a mandamus will lie, and in which, consequently, the defects in tlie pleadings might be cured by amendment, I cannot doubt that it ought to be remanded to the District Court to afford the opportunity to amend,-as was done in the case of the Commissioner of the General Land Office v. Smith; but being of opinion that it is a case in which a mandamus will not lie, and consequently that the complainants cannot so amend as to make out a case proper for the awarding of the writ, I concur in the conclusion, in which we all agree, that the proper disposition of the ease is that it be dismissed.
Reversed and dismissed.