The case is sufficiently stated in the opinion.
McIlvaine, J.
By the act of April 30, 1868 (65 Ohio L.. 259), and the act to which that act is amendatory, provision is made for the election of a superintendent of the irreducible school fund created and established in the Virginia military district lying and being in the county of *65 Warren. The Virginia military district lies between the Scioto river on the east and the Little Miami river on the west, but the county of Warren embraces territory both on the east and west side of the Little Miami. Within the county, and also within the military district, the following township and special school districts are wholly embraced —namely, Massie, Washington, Harlan, and Hamilton townships, and Harveysburgh, Butlersville, Miami, and Hopkinsville special school districts. Within the county, and partly within the Virginia military district, are the townships of Wayne and Salem and the special school districts of Waynesville, Morrow, Foster’s Crossings, and Deerfield. A portion of the last-named townships and special school districts lies west of the Little Miami and outside of the military district. In each of these school districts, special as well as township, lying within the Virginia military district, either in whole or in part, there is organized a board of education for the control and management of the schools therein, composed of a greater or less number of members, according to the provisions of the statute in each case made and provided, and each of said school districts, township and special, is entitled to the benefits of said irreducible fund in proportion to the number of youth of school age residing in such school district and also within the Virginia military district.
Section 2 of said act reads as follows:
“ Sec. 2. That there shall be elected by the members of the boards of education of the several townships, parts of townships, separate and special school districts, in that part of the county of Warren entitled to said school fund, at the regular meetings of the township hoards of education, on the third Monday of September, 1868, and biennially thereafter, a suitable person, who shall have the qualification of an elector in said district, who shall be superintendent of the common school fund in that part of the county of Warren aforesaid, who shall give bond, with sufficient security,, to be approved by the commissioners of said county of' *66 "Warren, made payable to the treasurer of said county, or Ms successors in office, in the penal sum of double the amount of said fund that may come into his hands, conditioned for the faithful performance of the duties required of him by this act, and for the safe keeping of all moneys that may come into his possession, which bond shall be filed with and recorded by the county recorder; and the returns of said elections shall be signed, sealed, and delivered by the clerks of the several boards of education before designated, to the auditor of said .county, on or before the first Monday following said elections, at which time the said county auditor, in the presence of the clerk of the court of common pleas and probate judge, shall open, count, and declare the result, and therefrom issue a certificate of election to the person having received the highest number of votes.”
The relator claims that elections were duly held in each of said districts, except only the special school district of Deerfield, on the third -Monday of September, 1868, at which elections there were cast sixty-five legal votes and no more, of which number thirty-four votes were cast for relator, and twenty-nine, and no more, for one Jonas W~. Stubbs. He also alleges that all said legal votes so cast at said election were duly certified by the proper officers as required by law and delivered to the defendant, auditor, etc., on or before the next Monday thereafter; that the defendant, on the day last named, in the presence of the clerk and probate judge, opened and counted the votes cast by the members of the boards of education of Massie township and Harveysburgh special school district, and finding that of such votes four were cast for relator and four for said Stubbs, decided there was no election. He also .alleges that said auditor did then and there wrongfully refuse to open .and .count the votes legally cast by the members of said several boards, which had been duly received by him, and did refuse to declare the relator duly elected to said office of superintendent, as it was his duty to do.
*67 The relator prays that defendant may be compelled by writ of mandamus to open all the certificates of returns of said election so delivered to or received by him, and to count all the legal votes cast at said election, etc.
The defendant, by his answer, alleged that the returns from Massie township and ITarveysburgh. special school districts were the only returns which came into his possession in the manner prescribed by law, namely, that were signed, sealed, and delivered to him by the clerks of the several districts. That in some instances he had received letters by mail, containing papers purporting to be returns, which were opened by him, without knowledge of the contents, before the day specified in the statute; and that one unsealed return was delivered to him by the clerk of the board of Washington township, the vote in which last-' named township was, for relator, 3; for Stubbs, 5. That the aggregate votes, shown by all the papers purporting to be returns, were seventy-three, of which Stubbs received thirty-nine, and the relator received thirty-four, and no more. The defendant denies that it was his duty to count the alleged returns, which came into his possession otherwise than in the manner prescribed in the statute, and which had been opened by him without any previous knowledge of the contents, before the day fixed by the statute for the canvass, in the presence of the clerk of the court of common pleas and probate judge.
The testimony offered in the case proves substantially the facts alleged by the defendant in his answer.
The prime question made in this case relates to the qualification of voters at the election of such superintendent. The relator claims that no person is qualified under the statute to vote for superintendent, who does not reside within the Virginia military district. On the other hand, the defendant claims that residence within the military district is not essential to such qualification. The terms of the statute'are : “ Members of the boards of ediication of the several townships, parts of townships, separate and special school districts, in that part of the county of Warren entitled *68 to said school fund.” While it is true that this fund can be applied for the support of common schools for the education of children residing in the military district, and for no other purpose, it is not claimed that territory within the militar} district may not be attached to territory without the military district, for school purposes, and that children residing in the .territory so attached are not entitled to the benefits of the fund equally with those residing in a school district wholly within the military district.
Nor can it be denied, that so much of said fund as may be distributed to any school district, whether composed, in whole or in part, of territory lying within the military district, is subject to the control of the board of education of such school district. It follows, therefore, we think, not only from the words, but also from the reason and spirit of the statute, that the residence of the members of the boards of education, authorized to vote, was not intended to be an element of qualification. *
It is a sufficient qualification that the voter be a member of any board of education for any school district in said county, composed, in whole or in part, of territory lying within the Virginia military district, wherein children between the ages of five and twenty-one reside. All such districts, whether township, or separate or special school districts, are “ entitled to said school fund.”
This being the true construction of the statute, it is quite clear, from the testimony, that the relator did not receive the highest number of votes cast at said election, and it was not the duty of the defendant to so certify.
It is suggested, however, that upon the relation of Goss, as a person having a common interest in the subject-matter, the writ should be allowed, as prayed for. The statute requires, that the returns shall be “ signed, sealed, and delivered by the clerks ” to the auditor, who shall, in the presence of the clerk of the court of common pleas and the probate judge, “ open, count, and declare the result.” We think it is the evident design of the statute that the returns shall be “ sealed up,” and so remain until opened in the *69 presence of the officers named. And it seems to ns that the returns should be delivered to the auditor by the clerks in person. But without determining the legal effect of the counting of returns received by the auditor through the mail, or unsealed, if he had assumed to canvass them, we are of opinion that it was not his clear duty to receive them in that manner or condition; and, under the circumstances of this case, he ought not now be commanded tc proceed with the count. 6 Texas, 457.

Peremptory writ refused.