BOOTH et al. v. CITY OF DALLAS et al. (No. 7493.)

(Court of Civil Appeals of Texas. Dallas. July 3, 1915. Rehearing Denied Oct. 16, 1915.)

1. LICENSES ⊙⇒5½—POWER OF CITY—CHARTER—MOTOR BUS.
The city of Dallas, under its charter power to license and regulate enumerated occupations, and all other occupations which, in the opinion of the board of commissioners, should be the proper subject of police regulation, and to regulate the use of automobiles or any motor vehicles and the use of its streets, could fix an annual license tax of $75 for the privilege of operating a motor bus over its streets.
[Ed. Note.—For other cases, see Licenses, Dec. Dig. ⊙⇒5½.]

2. LICENSES ⊙⇒1—MOTOR BUS—REASONABLE LICENSE OR TAX.
An annual license fee of $75, fixed by ordinance for the privilege of operating a motor bus in the streets of a city, where the cost of inspection and regulation would be in excess of the amount realized from the fees, was a reasonable fee based on the cost of regulation, and not objectionable as a tax.
[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 1; Dec. Dig. ⊙⇒1.]

3. CONSTITUTIONAL LAW ⊙⇒208—EQUAL PROTECTION OF LAWS—DISCRIMINATION.
Class legislation, affecting a particular class, is not unenforceable for that reason alone, since the Legislature has the right to classify persons or subjects for taxation or regulation, which right includes the right to exempt. The test of the validity of laws directed against a class is that the same means and methods be applied impartially to all the members of the class, so that it shall operate equally and uniformly upon all.
[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 649–677; Dec. Dig. ⊙⇒208.]

4. LICENSES ⊙⇒7—MOTOR BUS—DISCRIMINATION.
An ordinance imposing an annual fee of $75 for the privilege of operating each of about 500 motor busses over its streets, not sufficient to pay the expenses of inspection, regulation, etc., subjecting the drivers to a rigorous physical and mechanical examination, regulating the number of passengers, requiring them to select a fixed route and operate thereon at least six hours a day, was not discriminatory, in comparison with an ordinance imposing an annual license fee of $10 on each of about 100 motor vehicles, known as "rent cars," allowed to stand upon the streets only at certain places and certain hours, not operated over fixed routes, and charging a greater fare, regulated by the city, since they were engaged in different classes of street traffic.
[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7–15, 19; Dec. Dig. ⊙⇒7.]

5. CONSTITUTIONAL LAW ⊙⇒88 — PERSONAL RIGHTS—LIBERTY—BUSINESS OR VOCATION.
An ordinance for the regulation of motor busses, providing that a bus should be operated along the termini designated by the operator for at least six consecutive hours a day, such operation to be in accordance with the terms of the ordinance, and making it unlawful to operate any motor bus on any other street or route than that designated in its license certificate, was not in derogation of the citizen's right to engage in any lawful pursuit of business.
[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 164, 165; Dec. Dig. ⊙⇒88.]

6. MUNICIPAL CORPORATIONS ⊙⇒591—POLICE POWERS — DELEGATION — MINISTERIAL DUTIES.
A provision of an ordinance for licensing and regulating motor busses, that the operator of each bus should submit it to the city automobile inspector once every week, that if the inspector found it safe he should issue a certificate permitting its operation for one week, that if unsafe he should refuse such certificate, and making its operation without the inspector's certificate displayed thereon a penal offense, was not objectionable as an attempt on the part of the city to delegate the police power intrusted to it by the state.
[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1310; Dec. Dig. ⊙⇒591.]

7. LICENSES ⊙⇒29—REGULATION OF MOTOR BUSSES—CHARGE FOR LICENSE.
A city, having the right to charge a license fee reasonably commensurate with the cost of regulating motor busses, had the further right to make a charge of $1 for any additional expenses resulting from the loss of the original certificate, or a change of route or of seating capacity.
[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 63; Dec. Dig. ⊙⇒29.]

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action for injunction by C. C. Booth and others against the City of Dallas and others. From the dissolution of a temporary injunction, plaintiffs appeal. Affirmed.

McCutcheon & Church and L. R. Callaway, all of Dallas, for appellants. C. F. O'Donnell and G. C. Adams, both of Dallas, for appellees.

RASBURY, J. This is an appeal from the action of the judge of the Sixty-Eighth district court in dissolving a prior temporary injunction. The action of the court as disclosed by the record was based upon substantially the following matters:

Prior to the commencement of this suit appellee the city of Dallas in the manner provided by its charter enacted an ordinance defining a motor bus, imposing a license for the privilege of operating same, regulating its use, declaring the unrestricted use thereof a nuisance, penalizing same, and declaring an emergency. A motor bus by the ordinance is declared to be:

"Any automobile, automobile truck or trackless motor vehicle engaged in the business of carrying passengers for hire within the city limits, * * * held out or announced by sign, voice, writing, device or advertisement to operate or run, or which is intended to be operated or run, over any particular street or route or to any particular or designated point or between particular points or to or within any designated territory, district or zone."

The ordinance also contains many other provisions, but only those, together with relevant collateral provisions, deemed necessary to a discussion of the issues presented on appeal will be detailed, and those so necessary will be related while discussing the particular issue to which they relate. After the several successive steps necessary for the legal enactment of the ordinance had been observed, and after same had been published in the official organ of the appellee city one of the three required times, appellants, Booth, Cochran, Birthright, and Smith, for themselves and approximately 500 others similarly situated, filed this suit against appellees, the city of Dallas and its commissioners, for the purpose of having said ordinance declared void and unenforceable, and sought pendente lite a temporary injunction restraining appellees from in any manner enforcing same. Upon ex parte hearing temporary injunction was, granted, and appellees cited to appear subsequently and show cause why the temporary injunction should not be continued in force pending trial. At the time set there was a hearing, and the temporary injunction was dissolved.

The evidence adduced by appellants on the hearing tended to show that there was at that time 400 or 500 vehicles as defined by the ordinance being operated upon the streets of the city of Dallas, either by the owners· or those who rented same, engaged in transporting passengers for hire from point to point in the city for a fare of 5 cents per passenger. Those so engaged had a fixed route or termini, but would divert therefrom and make special journeys to any or all portions of the city upon terms agreed upon between the operator and those seeking such service. The operators of these vehicles averaged a gross income of $5.70 per day, with an average expense of $3 per day, leaving approximately a net income of $2.70 per day. Included in such earnings was whatever amount was secured from the special journeys above referred to, and for which special journeys the operators, as a rule, received greater compensation than they did for running over the fixed route. Those operators who testified at the trial gave it as their opinion, based upon their experience in the business, that a license fee of $10 was sufficient, and that the number of vehicles engaged in the business could not successfully operate without being permitted to divert from their fixed route and make special journeys here or there, as demanded by the public.

The evidence adduced by appellees tended to show that the operators of the vehicles defined by the ordinance have greatly congested the city's streets with traffic in the downtown sections. Since the operation of such vehicles there have been numerous accidents in which such vehicles were concerned, and as a consequence of which persons have been injured and property damaged and destroyed. Many of the vehicles are old and worn. The operators run irregularly over their selected routes, and do not go to the limit thereof, but return as soon as they secure enough passengers to fill the car, taking them on at any point. Many of the vehicles are operated at a rapid and dangerous speed. Many of them transport passengers in double the number, of their rated capacity, and after filling the body of the car they permit them to stand upon the running board. It was also shown that the cost of enforcing the regulatory provisions of the ordinance, including supervision, inspection, and police surveillance, would be in excess of the amount which could be realized from the license fee and other charges provided for in the ordinance.

It was further shown that there are in operation in the city of Dallas 75 or 100 motor vehicles designated by ordinance as "rent cars." There are two ordinances that regulate the right to operate these rent cars. Such regulations, material to the issues presented on appeal, are that such cars are required to pay a license fee of $10 per annum and may stand upon the streets only at certain places at given hours. The evidence further shows that such cars do not operate over fixed routes, but stand at the places on the city streets fixed by ordinances or in garages from whence they are called by those desiring their services. These vehicles charge a much greater fare for their services than the motor bus, such charges being regulated by the city.

[1] We will consider first the attack on section 6 of the ordinance. Said section

fixes an annual license fee of $75 for the privilege of operating a motor bus over the streets of the city. This charge is declared to be void for many reasons; the first in natural order being the claim that the city's charter did not authorize same. By article 2, section 3, subdivision 24, of its charter, the city has authority, among other things, to license and regulate, in addition to the businesses and occupations therein enumerated, "all other business or occupations whatever, which in the opinion of the board of commissioners shall be the proper subject of police regulation." By subdivision 33 of the same article and section authority is conferred upon the city "to regulate the use of automobiles, motor cars, motorcycles, or any motor vehicles. * * * " By subdivision 4 of section 7 of the same article there is conferred upon the city, in addition to certain enumerated things, the further right "to regulate the use" of its streets. These provisions are specific grants by the state of its police power, intrusted to the city for its exercise and enforcement. From these grants it is clear that the city has complete dominion over the entire subject in controversy in this suit, since it has the right to regulate every conceivable kind of motor vehicle, the right to control and regulate the use of its streets by such vehicles, and the right to license and regulate all occupations. So broad and comprehensive are the specific grants that the right of the city to fix a license fee against those operating the motor bus is not dependent upon the quoted grants as a whole, but, in our opinion, can be sustained by authority of any one thereof. The right to regulate the use of the city's streets, or the right to regulate the use of all vehicles upon the city's streets, is broad enough to authorize both the regulation of the motor bus and the imposition of a fee for the privilege of such use. We said as much in Southwestern Tel. & Tel. Co. v. City of Dallas, 174 S. W. 636. That the city would have the right to fix the license fee under the express provision permitting it to license and regulate every conceivable business or occupation seems too clear for discussion. The charter grants that much authority, the Constitution does not forbid it, and the operating of a motor bus is an occupation or business. Further, the right to prescribe a license in such cases is not an open question in this jurisdiction, but has been repeatedly sustained in cases enacted under charter provisions no broader than those contained in the grant to the city of Dallas. We therefore feel that a discussion of the reasons for the rule and its applicability in the instant case is unnecessary, since in the cases presently cited those matters are fully discussed and many other authorities cited. Ex parte Gregory, 20 Tex. App. 210, 54 Am. Rep. 516; Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005; Ex parte Denney, 59 Tex. Cr. R. 579, 129 S. W. 1115.

[2] It is next urged that the license fee is unreasonable and arbitrary, because in fact a tax, though denominated a license fee, in order to cloak and conceal its real purpose. If the conclusions stated in the proposition were supported by or fairly deducible from the evidence, it would present a serious issue. There is, however, in the record no evidence that tends to support the contention. We have said at another place that appellant's testimony tended to show that they could not pay the tax and profitably operate the motor bus. Incidentally such fact might result from many causes, conceivably competition or a fare out of proportion to the cost of operation, but which would in no respect lessen the expense of regulation, or make regulation any the less necessary. We have also said at another place that the evidence of appellees tends to show that the cost of supervision, inspection, and police surveillance would be in excess of the amount realized from the fee prescribed. No one seems to challenge the necessity of regulation on any of the many authorized grounds. The details of the evidence from which such conclusion is deduced, and the truth of which is not challenged, reveals that it is based upon the increased number of officers necessary to be employed as a result of so large an additional number of public vehicles upon the streets and the purchase of additional motorcycles to be used in that connection. This evidence shows that the sum charged is reasonable, in view of the added expense, and no testimony challenging same was offered by appellees. The unchallenged testimony being as stated, it results that the license fee is not in truth a tax, but purely a charge based upon the cost of regulation. Ex parte Gregory, supra; Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488.

[3, 4] The next issue presented is the familiar and necessarily oft-recurring claim that the ordinance is discriminatory, in that all persons subject to its provisions are not treated alike under like circumstances, and hence denies to appellant that equal protection of the law guaranteed alike by our state and national Constitutions. In the recent case of Southwestern Tel. & Tel. Co. v. City of Dallas, supra, we stated that the general rule, gathered from the decisions of the appellate courts of this state, those of the Supreme Court of the United States, the courts of the other states of the Union, and the text-writers, which were cited, is that "class legislation or laws that affect a particular class are not unenforceable for that reason alone," since "the right of the Legislature to classify persons, corporations, or subjects for taxation, regulation, or restriction in the broadest sense is not an open question under either our state or national Constitution, and the right to classify includes the right to exempt, as does the right to exempt include the concurrent right to discriminate." The

controlling test of the validity of all laws directed against a particular class may be said to be that the same means and methods shall be impartially applied to all the constituents of the particular class, so that the law shall operate equally and uniformly upon all persons in the class sought to be regulated. If appellants are constituents of the class defined by the ordinance attacked, and others in the same class are exempt from its provisions, they have just cause for complaint.

Appellants maintain that such condition is shown in the treatment accorded them and that accorded those engaged in the rent car business, since there is a difference in the regulatory measures as applied to rent cars and those applied to the motor bus. The facts do disclose that the regulations applicable to rent cars, which are covered by another and prior ordinance, the essential provisions of which have been herein noted, and those applicable to the motor bus, are dissimilar in many and important respects. Some of the salient differences are that the rent car is required to pay a license fee of $10, while the motor bus pays $75. The rent car operator is not subjected to the same rigorous physical and mechanical examination touching his qualifications to operate his vehicle that the motor bus operator is. The number of passengers that may be carried by the motor bus is regulated, but not so with the rent car. The motor bus is required to select a fixed route or termini and traverse the same for not less than six hours per day, while the rent car is permitted to go from its garage or stand to any point in the city over any route chosen. These radical and important differences in the regulatory provisions between the motor bus and the rent car are noted, not because in our opinion they establish discrimination, but for the purpose of emphasizing the fact that the regulatory provisions of any ordinance are without significance whatever in determining whether all the constituents of the defined class are legislated against equally and uniformly; for if rent cars and the motor bus do not engage in like street traffic they are not as matter of fact in the same class, and if not in the same class a difference in regulations as applied to distinct classes is immaterial. Thus the true inquiry is not, is there a difference in the manner of regulating rent cars and the motor bus, but is the rent car and the motor bus, as defined by the respective ordinances, engaged in similar or dissimilar street traffic? This is, of course, a question of fact to be determined from the evidence contained in the record.

The record of the evidence beyond controversy discloses great dissimilarity in the business pursued by the two classes of vehicles. As affecting street traffic and congestion thereof there are in operation 500 motor busses as against 100 rent cars. The motor bus has no fixed stand, but is continually in motion upon a fixed route upon the streets of the city, soliciting and halting to accept business at any place where the passenger is found, and upon some of the fixed routes there are as many as 100 buses. As related to the same question, rent cars do not transact their traffic in such manner, but are located either at garages or stands upon certain streets between hours fixed by ordinance, whence they are called by the public when their services are needed. Thus the mere statement of the manner and method of the traffic in which the respective vehicles are engaged demonstrates that each is pursuing a different class of business, so radically dissimilar in fact as to leave no room for fair dispute or disagreement. Appellants being then in a class entirely dissimilar from that of those who operate rent cars, it is immaterial that the regulations are dissimilar. Dissimilar regulations of dissimilar occupations cannot, of course, serve as a basis or support in law for holding the one or the other discriminatory, since dissimilar methods of regulating similar classes are, under the rule cited, the test of discrimination.

[5] The constitutionality of section 9 is also attacked. This section provides that the motor bus shall be operated along the termini designated by the operator, save in certain excepted cases not material here, and for any portion or all of the day, at option of operator (but must by section 2 be operated for at least six consecutive hours), and concludes with the provision:

"But such operation shall be at all times in accordance with the terms of this ordinance, and it shall be unlawful to operate such motor bus as a public conveyance at any place or on any street other than along the route designated in the license certificate."

The concluding provision just quoted is vigorously attacked as being in derogation of appellant's common right to pursue any other lawful occupation than that of operating a motor bus. We do not construe the quoted portion of section 9 as does able counsel for appellants. The ordinance of which section 9 is a part does not, in our opinion, expressly or impliedly undertake to interfere with the free and undeniable right of the citizen to engage in any other lawful pursuit or business for which he may qualify, but undertakes to regulate solely those who may wish to engage in the operation of a motor bus as therein defined. The language contained in section 9 should and will be construed in the light of the purpose sought by the ordinance. So regarded, it is clear to us that the provision that it "shall be unlawful to operate such motor bus as a public conveyance at any place or on any street other than along the route designated," means necessarily no more than that the citizen who desires to engage in the business defined by the ordinance shall, while engaged in that business, be confined to the particular fixed route or termini se-

lected by him at the time he applies for his license. Any other construction is not warranted by the general purpose of the ordinance as reflected by its various special provisions. We do not agree with counsel that the effect of the quoted provision is to deny any appellant the right to engage in another business when he has complied with the provisions of the one in controversy. It does enact, of course, that certain regulations must be observed in order to legally engage in the business regulated by the ordinance. From that circumstance, however, it surely cannot be said that any one is prohibited from engaging in any other lawful pursuit. If any appellant desires to engage in any other lawful occupation, his right to do so may not be denied, whenever he has complied with any regulations that may be imposed upon such other business or occupation.

[6] It is also urged that section 15 of the ordinance is void. This section requires the operator of each motor bus to submit his vehicle to the city automobile inspector once every week for inspection. If upon examination the inspector finds the vehicle safe for use as a motor bus, he shall issue the operator a certificate permitting its operation for one week. If the inspector finds the vehicle unsafe for use as a motor bus, he shall refuse to issue certificate. Operation of the motor bus without the inspector's certificate displayed conspicuously thereon is made a penal offense. This section is attacked in effect on the ground that it is an attempt upon the part of the municipality to delegate to another the police power intrusted to it by the state, which it is argued it may not do, since the trust is official and personal, and may be exercised only by those to whom it is committed by the state.

In connection with section 15, just referred to, and as a matter to be considered in connection therewith, the city of Dallas, simultaneously with the passage of the ordinance regulating the motor bus, enacted another ordinance creating the office of city automobile inspector. Omitting formal and nonessential portions, the last-mentioned ordinance makes it the duty of and confers upon the inspector the authority to inspect and examine every character of motor vehicle operated for hire in the city of Dallas and keep a record thereof, to require them to secure license or inspection certificates required by other ordinances, to examine all applicants for license and enforce ordinances regulating the number of passengers to be carried, etc.

Recurring, then, to the proposition asserted by appellants, it is readily conceded that it states a correct and long-settled principle of law which it is unnecessary to sustain by the citation of authority. Accompanying the rule stated, however, at all times, is the further rule, equally well defined and established, that the former will not be construed

and applied so as to require the city commissioners, in the exercise of the city's police powers, to personally engage "in every step necessary for the exercise of the function"; but they may "fully discharge their official duty and exhaust the municipal discretion by enacting by-laws or ordinances to be executed by the proper board or officer." 28 Cyc. 694. Another concomitant of the rule invoked by appellants is that the municipality, after exercising its discretion as to the enactment of laws, is not forbidden from delegating its "ministerial or administrative functions to subordinate officials." 28 Cyc. 276. Thus it appears that on either limitation of the general rule section 15 may be sustained. Having the charter authority, as we have determined at another place in this opinion, to regulate every character of motor vehicle engaging in street traffic upon its streets, the city had the right, under the first limitation of the rule noted, to enact an ordinance voicing or exercising its authority on the particular and precise subject, and to confer upon the inspector the authority to enforce the provisions thereof. This was done, and nothing left to the discretion of the inspector, since he is required to inspect every motor vehicle and its mechanism, and determine if it is one that can be safely operated upon the city's streets.

We may, however, discard the broad rule, which holds that the municipality may by exact and precise ordinance confer on another the enforcement of its discretion as declared by duly enacted ordinance, and yet find ample authority for the act complained of in the second limitation of the general rule noted. That is that section 15, taken in connection with the ordinance creating the office of city automobile inspector and defining his duties and authority, evidences nothing more nor less than a transfer by the city to said officer of its ministerial and administrative functions. The discretion of the city in reference to the matters covered by either ordinance is in the last analysis whether it will require the operators of the motor bus to submit it to inspection, a requirement obviously intended for the protection of the life and property of the citizen. By the enactment of section 15 and the ordinance creating the office of inspector, it clearly and fully exercised that discretion, and directed that thereafter each motor bus should be examined and inspected in all of its mechanism and parts, in order to determine whether it could be safely operated upon the city's streets. The further provision that such examination shall be made by the inspector confers upon him none of the discretion conferred on the city, since the acts of examining the car and the issuance of the certificate are but ministerial or administrative, as distinguished from legislative and discretionary, authority. Bouvier defines a ministerial act "to be one which a person performs in a given state of facts,

in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the acts being so done," and cites in support of the defined meaning Rains v. Simpson, 50 Tex. 501, 32 Am. Rep. 609, and which case in turn cites Commissioner v. Smith, 5 Tex. 471, and Arberry v. Beavers, 6 Tex. 457, 55 Am. Dec. 791. See, also, Hitchcock v. Galveston, 96 U. S. 341, 24 L. Ed. 659.

Every element of the ministerial act is found in section 15 and the other ordinance, unless it can be said that the method of examining the motor vehicles is not precisely prescribed. The city automobile inspector is required to be one skilled in the mechanism of automobiles, and it is the nearly unanimous rule that in ministerial matters much may be left to the judgment and discretion of public officials in reference to matters resting peculiarly upon professional or expert knowledge or skill. Further, it is common knowledge of all that the mechanism of automobiles, while not exceedingly intricate, is nevertheless of that character that requires the judgment at least of a skilled mechanic, and for whose guidance a set or fixed rule would be out of the question. Should the inspector, as appellants argue might be the case, refuse arbitrarily in the exercise of his authority to issue the certificate, notwithstanding the applicant was entitled thereto, this will not affect the validity of the regulation, since the presumption is that the officer will proceed impartially in the exercise of the discretion conferred, and until it is shown to the contrary no cause of action exists. Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005.

[7] It is next urged that sections 5, 12, and 14 are ultra vires. These sections, in the order in which they are enumerated, provide that, in the event an operator desires to change his route after it has been selected, he will be required to pay $1 for the new certificate made necessary by the change, or, if he loses his original certificate, he is required to pay $1 for a new certificate, or, if he desires to operate a car of greater seating capacity than he is licensed to operate, he is required to pay $1 for a new certificate to that effect. The evidence of appellees tends to show that the cost of securing and issuing the license certificates and number plates enumerated will reasonably be the charges fixed. On that issue appellants made no proof. The city having the right to charge a license fee reasonably commensurate with the cost of regulation, it would have the further right to make a charge for any additional expense resulting from loss of original certificate, etc., or change of route when sustained by the evidence, as it is on the issue under discussion.

Finding no reversible error in the record, the judgment of the court below is affirmed.