### HINDS et al. v. MINUS.
### No. 9340.

Court of Civil Appeals of Texas. San Antonio.

Nov. 1, 1933.

Rehearing Denied Nov. 22, 1933.

William H. Russell and Max H. Wier, both of San Antonio, for appellants.

Bruce W. Teagarden and J. H. Bickett, both of San Antonio, for appellee.

FLY, Chief Justice.

This appeal was perfected by United Services Automobile Association, together with the officers and members of that corporation, from an order of the district court restraining such corporation and its officers from canceling the policies referred to in plaintiff's petition, and terminating his, the said J. C. Minus', membership in the United Services Automobile Association, and from denying him any and all of the rights and privileges of membership in said association, and from doing any act or thing in derogation of his rights under said contract of insurance, and from doing anything toward repudiating his (plaintiff's) membership in said association, or failing and refusing to recognize the validity and effectiveness of said contracts of insurance; and the said defendants, and each of them, were ordered to recognize as valid and binding and in force and effect the said contracts of insurance referred to in plaintiff's petition, which contracts of insurance were entered into between said association with said plaintiff, and to recognize plaintiff's rights as a member of said association and to permit him to enjoy all the rights and privileges as a member of said association, until final trial and judgment in said cause.

The suit in which the temporary injunction was granted was based on a petition alleging that J. C. Minus was a member in good standing in the United Services Automobile Association, an insurance association composed of men selected from active and retired commission and warrant officers of the United States Army. The object of the association was to afford its membership automobile accident, fire, and casualty insurance. Plaintiff further alleged that prior to June 21, 1933, he was a member, in good standing, and had been for several years, having been duly accepted into membership in accordance with said contracts of insurance and by-laws of the association, and held certain policies of insurance in said association.

"Plaintiff shows further that at and before June 21st, 1933, said Association had accumulated a reserve and funds in excess of the sum of Four Hundred and Twelve Thousand, Six Hundred and Fifty-seven ($412,657.00) Dollars, which amount of reserve, together with other assets of the Association, was far in excess of the reserve required by law and of any liabilities that said Association could reasonably be expected to become bound for under any and all contracts of insurance, or other contracts, which had been entered into by the Association, and that since the purpose of the organization and Association was and is to pay all losses incurred, and to return to the members any and all pro rata sums in

excess of all losses and liabilities suffered by the Association after setting up the reserve or reserves required by law, the plaintiff, as a member of said Association, in accordance with the contract and by-laws of said Association, and the law, had and has an interest in said reserve or surplus accumulated by said Association."

It was further alleged that on the 21st day of June, 1933, at a regular meeting of said association, the following resolution was read and adopted:

"Whereas, the past few months have adequately disclosed that Major J. C. Minus is no longer in accord with the policies of this association under which it has done business for the past several years and grown up to its present magnitude.

"And, whereas, it is believed to be to the best interest of the association and its members that his insurance in the association be cancelled:

"Now, therefore, be it resolved by the members of the United Services Auto Association in annual meeting this June 21st, 1933, that the attorney-in-fact be, and he is hereby, authorized and directed to forthwith cancel all policies of insurance issued to Major J. C. Minus, in accordance with the terms thereof."

The petition alleges:

"That plaintiff had no notice or knowledge of the fact that said resolution would be presented and acted upon at said meeting prior to the moment at which it was presented and read by the movant, H. A. White. That plaintiff had no advance notice of the fact that said resolution, in effect expelling him as a member of said Association, would be taken up and acted upon at said meeting. That said charge against him, so made, was general and indefinite, and not clearly stated. That no special impartial body or tribunal was selected to pass upon said matter of expulsion of plaintiff. That said resolution was then presented to the body at said meeting, and was passed and carried by a majority vote of the members present and of the proxies held by them. Plaintiff shows that such expulsion was arbitrary, capricious, lacking in good faith, and without just cause. Plaintiff shows that at the time of said meeting, and for a long time theretofore, he was a member in good standing in said Association, and had performed all the duties and obligations incumbent upon him as such member; that the passage of said resolution was unjust, unlawful, and was not based upon any just cause or reason, and was done arbitrarily, and was lacking in good faith.

"Plaintiff shows that thereafter, the exact hour of which is unknown to him, but he alleges that it was done practically immediately after the adjournment of said meeting, which took place at about 5:00 o'clock P. M. on June 21st, 1933, the said Ernest Hinds, at-

torney-in-fact, and Secretary and Treasurer of said Association, wrote him a letter, in substance, as follows:

" 'Major Josiah C. Minus, USA, Ret.
" '719 Carson Street,
" 'San Antonio, Texas
" 'Dear Sir:
" 'In compliance with the resolution adopted by the Members of this Association in the Annual Meeting this date, you were hereby notified that your polices JR-14764 and JT-7348, issued to you by this Association, are hereby cancelled effective at noon June 26, 1933.
" 'These cancellations result in a credit to you of $129.25 for pro rata unearned premiums, and $23.18 for pro rata earned dividend, making a total refund due you of $152.43 for which we enclose check #8364.
" 'Very truly yours,
" 'United Services Automobile Association
" 'Ernest Hinds, Atty-Sec-Treas.' "

Plaintiff's petition alleged that said check described in the letter was inclosed.

The facts alleged and proved show that the association was a military organization for the benefit of military men holding any office in the Army, from second lieutenant up to the highest general, and none but these officers, wearing the bars, the oak leaf, the eagles, or the stars can enter the organization. It is provided in the policy that the organization may cancel the policy of insurance "by giving the subscriber at least five days written notice of cancellation by registered mail to his last known address, with or without tender of the excess of deposits made above the pro rata deposit for the expired term and such notice shall be sufficient, and conclusively presumed to have been received, and no liability hereunder shall attach at the exchange after the expiration of five days from the mailing of such notice of cancellation, whether received or not; and the excess, if not tendered, shall be paid the subscriber on demand."

A similar provision is made in the by-laws of the association. There is also a provision in the policy and by-laws for the voluntary withdrawal of any member from the association at any time. The appellee does not claim that he did not have full knowledge of the provisions in the by-laws and policy in regard to summary expulsion of the member and cancellation of the policies. He was a party to the contract with full knowledge of all the provisions in the by-laws and policy. In fact, the evidence showed that he had been active in the expulsion of a member from the association and in the cancellation of the member's policy.

██ The appeal in this cause is, as before stated, from an order granting a temporary writ of injunction against the association, and it follows that this court will

be confined to the adjudication of whether the injunction was issued under the rules of equity. At the time the writ of injunction was issued, a suit instituted by appellee was pending in the district court wherein appellee sought to regain his membership and to revive the canceled policies. The equity system in England grew out of the rigidity and inflexibility of the common law as interpreted by the English judges, and, as modified through the centuries, it has come to America, and its principles, more or less modified, have been adopted in all American courts. Equity, as administered in America at least, is for the purpose of giving aid to the execution of the law according to the principles of justice. It cannot be used to supplant or circumvent the law, but only to give aid and assistance to its higher and better principles. Hence the rule that equity will not interfere when the law provides an adequate remedy for any wrong. Of course, a writ of injunction is an equitable remedy and should not be used except in the execution of law and in the protection of the rights of the individual. It cannot take the place of the law or be made a substitute for it, but must be used in upholding and aiding in the due execution of the law.

█ In this case the objects presented in obtaining the temporary writ of injunction were not only to maintain the status of the case as exhibited by the pleadings in the lower court, but to supersede and perform the functions of the law. Appellee sought not only to preserve his status and the status of his claim, but also sought to regain, through the writ of injunction, what he had lost by having himself restored to his place as a member of the association, with all the rights appertaining to him as such member.

It was alleged in the decree granting the injunction, as follows:

"It is therefore ordered, adjudged and decreed that the defendants, Ernest Hinds, H. A. White, Roger Brooks, James H. Bryson, John S. Chambers, Arthur G. Fisher, Robert H. Lewis, Richard U. Nicholas, Alex T. Ovenshine, W. E. Prosser, James Totten, John A. Brooks, I. P. Swift, and the United Services Automobile Association and each of them are restrained from cancelling the policies of insurance referred to in plaintiff's original petition in this case, or terminating his membership in the United Services Automobile Association, and from denying him any and all of the rights and privileges of membership in said Association, and from doing any act or thing in derogation of his rights under said contracts of insurance, and from doing anything toward repudiating his, plaintiff's, membership in said Association, or failing or refusing to recognize the validity and effectiveness of said contracts of insurance, and the said defendants, Ernest Hinds, H. A. White, Roger Brooks, James H. Bryson, John S. Chambers, Arthur G. Fisher, Robert H. Lewis, Richard U. Nicholas, Alex T. Ovenshine, W. E. Prosser, James Totten, John A. Brooks, I. P. Swift, and the United Services Automobile Association, and each of them, are ordered to recognize as valid and binding and in force and effect the said contracts of insurance referred to in plaintiff's original petition, which was heretofore filed, which contracts of insurance were entered into by said Association with said plaintiff, and to recognize plaintiff's rights as a member of said Association, and to permit him to enjoy all the rights and privileges as a member of said Association, until final trial and judgment in this cause, conditioned that plaintiff file a good and sufficient bond, in terms of law, in the sum of One Thousand ($1,000.00) Dollars, to be approved by the Clerk of this Court."

It must be kept in view that appellee had been expelled and not merely threatened with expulsion; that his policies had been canceled and were not in danger of being canceled. The expulsion and the cancellation were accomplished facts and could not be restrained by writ of injunction. Appellee had lost, through the action of the association, all the rights, privileges, and benefits arising from his membership, and it was futile to endeavor to restrain matters that were past and gone. Not only did the court seek to set aside through a temporary writ of injunction all that had been done in regard to appellee by the association, but with one stroke of the pen restored to him all the rights of which he had been deprived. Appellants had claimed to act under the terms of the by-laws and the policies, and however arbitrary those provisions may seem, they had been agreed to and for a long period of time acquiesced in by appellee, and if they were violated or ignored by the association the law offered an adequate remedy in its ability to restore the lost membership and award all damages arising from such arbitrary and unlawful action. As before stated, the association was not threatening any further action. It had destroyed the membership of appellee and canceled his policies, thereby severing all the connection which appellee had with the association.

It is alleged that no appeal from the decision of the association in expelling appellee and canceling his policies was available to him; and under such circumstances a member would not be completely at the mercy of the association, but had the right to appeal to the courts of his state to redress his wrongs and repair his injuries. Screwmen's Benevolent Association v. Benson, 76 Tex. 552, 13 S. W. 379, 380.

It is held, however, in the above decision that the writ of mandamus would be the appropriate instrument to be used in restoring the expelled party to his rights in the organization. It fully sustains the right of the injured party to resort to the courts of the county, but by affirmatively holding that the writ of mandamus could be used effectively excludes the idea that a writ of injunction could be resorted to to obtain the relief which was attempted to be given in granting the temporary writ of injunction. The procedure and the remedies accorded are fully set forth in the opinion cited. We copy with approval the following in the case cited:

"But the writ of mandamus is a remedy of the last resort. It is universally held that if a party has an adequate common-law or statutory remedy he cannot resort to this writ, and the rule has been repeatedly announced in this court. Board of Land Commissioners v. Bell, Dallam, Dig. 366; Cullem v. Latimer, 4 Tex. 329; Arberry v. Beavers, 6 Tex. 457 [55 Am. Dec. 791]; Ewing v. Cohen, 63 Tex. 482.

"A member of a voluntary association is bound by a sentence of expulsion against him lawfully rendered by a tribunal created in pursuance of its constitution, and clothed with that power. The rule also applies at least to such incorporated societies as are not organized principally for commercial gain. By uniting with the society, the member assents to and accepts the constitution, and impliedly binds himself to abide by the decision of such boards as that instrument may provide, for the determination of disputes arising within the association. The decisions of these tribunals, when organized under the constitution, and lawfully exercising these powers, though they involve the expulsion of a member, are no more subject to collateral attack for mere error than are the judgments of a court of law. But if the tribunal act illegally; if it declare a sentence of expulsion for an offense for which that penalty is not provided by the constitution and laws of the association; and if there be no right of appeal, within the association, reserved for the redress of the injury,—the courts will review the proceedings, and, if found illegal, will treat them as null, and restore the member to his privileges as such."

In the present case the allegations fail to show that there was a noncompliance with any provision of the by-laws or the recitals in the policies of insurance, and if there had been, a writ of mandamus could have been applied for and the necessary relief given appellee. Appellants were under no obligation to give a reason for the expulsion and cancellation. They did, however, give reasons generally, which, in connection with the circumstances, might be considered reasonable and proper.

We conclude that the writ of injunction was improperly issued, and the order granting the injunction will be reversed and dismissed, and the cause will be remanded for a trial on the merits.

## On Motion for Rehearing.

Appellee appears to be aggrieved by the fact that this court called the United Services Automobile Association a corporation, and it is admitted that such association, company, or insurance company, is not a corporation and the court erred in so denominating it. That error, however, did not in any way affect the law applicable to the writ of mandamus being the proper writ to be used in compelling action on the part of the officers. We still hold that the writ of injunction should not have been issued when an adequate remedy is provided by law.

This is an appeal from an order granting a temporary injunction, and it is the contention of appellee in a motion for rehearing that the suit was not brought for anything except to obtain a temporary injunction. We cannot conceive of what benefit a temporary injunction would be to appellee in this case. The petition shows that appellant was suing for his membership and place in the organization, call it what you may, from which he had been ousted. This was alleged to be a thing of value to him, and he was not suing merely for a temporary injunction, but was seeking to have a valuable right restored to him and interference therewith prevented by the officers of the organization. Appellee did not sue merely for a temporary injunction, but for valuable rights to which he alleged he was entitled.

We find no objection to the former opinion, which can be sustained, and the motion for rehearing will be overruled.